Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                       )
IN RE:                                 )    CASE NO.         04-31952 (LMW)
                                       )
   BRIAN T. DOUGHERTY,                 )    CHAPTER          7
                                       )
        DEBTOR.                        )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   DENISE A. DOUGHERTY,                )    ADV. PRO. NO.    04-3116
                                       )
            PLAINTIFF                  )    DOC. I.D. NO.    38
                                       )
        vs.                            )
                                       )
   BRIAN T. DOUGHERTY,                 )
                                       )
            DEFENDANT.                 )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

Jeffrey B. Sienkiewicz                          Attorney for Plaintiff
Sienkiewicz & McKenna, P.C.
9 South Main Street
P.O. Box 786
New Milford, CT 06776


Brian T. Dougherty                              *Pro se* Defendant
1412 W. Henley Street
Olean, NY 14760


## MEMORANDUM OF DECISION
## RE: MOTION FOR JUDGMENT

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court is the above-referenced plaintiff's (the "Plaintiff") Motion for Judgment (A.P. Doc. I.D. No. 38, the "Motion")[1] pursuant to which the Plaintiff seeks a determination that a certain debt (the "Debt") described in the Fourth Count (as hereafter defined) of the Complaint (as hereafter defined) owed to her by the above-referenced debtor (the "Debtor") was not discharged in this chapter 7 case pursuant to 11 U.S.C. § 523(a)(15).[2] The court has jurisdiction over this proceeding as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[3]

## I.   BACKGROUND

The Debtor commenced this chapter 7 case by a petition filed on April 23, 2004. The Plaintiff timely commenced the instant adversary proceeding by a complaint (A.P. Doc. I.D. No. 1, the "Complaint") filed on July 23, 2004. The Complaint sought a determination that certain alleged obligations owing to the Plaintiff from the Debtor pursuant to a judgment of divorce, as ratified by a separation agreement, were not discharged in this chapter 7 case pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(5), 523(a)(6) and 523(a)(15).[4] The Complaint was pled in five counts: the first count asserts a claim for nondischargeability under Bankruptcy Code §§ 523(a)(4) and (a)(6); the

---

[1]   References herein to the docket of this adversary proceeding are in the following form: "A.P. Doc. I.D. No. ___." References herein to the docket of the chapter 7 case appear in the following form: "Case Doc. I.D. No. ____."

[2]   References herein to title 11 of the United States Code and/or to the Bankruptcy Code are references to the same as they existed prior to their amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[3]   That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

[4]   Certain other state proceedings (the "State Court Proceedings") between the parties were pending in the Connecticut Superior Court when the underlying bankruptcy case was commenced. Such proceedings were stayed by the automatic stay.

second count asserts a claim for nondischargeability under Bankruptcy Code § 523(a)(15); the third count asserts a claim for nondischargeability under Bankruptcy Code §§ 523(a)(15); the fourth count (the "Fourth Count") asserts a claim for nondischargeability under Bankruptcy Code §§ 523(a)(15); and the fifth count (the "Fifth Count") asserts a claim for nondischargeability under Bankruptcy Code §§ 523(a)(5). (*See* A.P. Doc. I.D. No. 1.) The Debtor, through counsel, filed his answer to the Complaint on September 30, 2004. (*See* A.P. Doc. 13, as amended by A.P. Doc. I.D. No. 16, the "Answer.") In addition to responding to the Complaint, the Answer asserted affirmative defenses.

In light of the pending State Court Proceedings, on January 25, 2005, the court issued that certain Order Partially Staying Adversary Proceeding, Modifying Automatic Stay To Permit Initiation/Prosecution of State Court Proceedings and Scheduling On-the-Record Status Conference (A.P. Doc. I.D. No. 21, the "Stay Order"). The Stay Order: (1) stayed this adversary proceeding (with the exception of the Fifth Count);[5] (2) modified the automatic stay to permit the parties to prosecute (and defend) the State Court Proceedings to judgment (with enforcement stayed); (3) modified the automatic stay to permit the parties to prosecute (and defend) a contempt citation (if necessary) to enforce the Separation Agreement (as defined below); and (4) scheduled an on-the-record status conference. With respect to the Fifth Count, on January 25, 2005, the court issued that certain Partial Judgment (Fifth Count) (A.P. Doc. I.D. No. 22) determining that the Debtor's obligations described in paragraph 33 of the Complaint were not discharged.

During the pendency of the State Court Proceedings (including the appeal of at least one decision rendered in such proceedings), the court held numerous status conferences with the parties

---

[5] The Fifth Count of the Complaint sought a determination of nondischargeability in respect of alimony, child support and child care expenses pursuant to Bankruptcy Code § 523(a)(5).

for the purpose of obtaining progress reports on the State Court Proceedings.[6]  On September 24, 2008, the court held a final status conference[7] at which the court granted leave to the Plaintiff to file an amended complaint to reflect the various decisions issued in the State Court Proceedings and to file an amended pretrial order.

On October 6, 2008, the Plaintiff filed an Amended Complaint.  (*See* A.P. Doc. I.D. No. 29, the "Amended Complaint.")  Pursuant to the Amended Complaint and in light of the resolution of the State Court Proceedings, the First Count, Second Count and Third Count of the Amended Complaint were withdrawn and, as previously noted, judgment entered on the Fifth Count. Consequently, only the Fourth Count remains pending before this court pursuant to the Amended Complaint.[8]  Pursuant to the Certification attached to the Amended Complaint, the Debtor was served with a copy of the Amended Complaint by first class mail on October 2, 2008 at 1412 West Henley Street, Olean, New York (the "New York Address").  (*See id.*)[9]

On October 17, 2008, counsel for the Plaintiff filed a Request for Entry of Order with respect to a proposed pretrial order (the "Proposed Pretrial Order").  (*See* A.P. Doc. I.D. No. 33.)  The

---

[6]   At a March 14, 2007 conference, the Debtor informed the court that he was no longer represented by his counsel, Michael J. Mannion, Esq.  Because Attorney Mannion's withdrawal was not of record, the court scheduled a status conference on April 4, 2007 to discuss the status of counsel's representation of the Debtor.  At the April 4 status conference, Attorney Mannion represented to the court that he did not file a motion to withdraw because the Debtor had filed a *pro se* notice of appearance (the "Notice of Appearance") in lieu of his appearance.  (As indicated below, the Notice of Appearance was not filed until substantially much later.)  The court construed the Attorney Mannion's remarks as an oral motion to withdraw and relieved Attorney Mannion from representing the Debtor in this adversary proceeding.  An entry to that effect was made on the docket.  (*See* 4/4/07 Docket Entry.)

[7]   The State Court Proceedings (including any appeals) were concluded.

[8]   References hereafter to the "Fourth Count" are references to the fourth count of the Amended Complaint.

[9]   The origin of the New York Address is explained in part II., *infra*.

Proposed Pretrial Order was filed on the docket.  (*See id.*)  It (among other things) stated an "Answer or Response Date" to the Amended Complaint of October 22, 2008 and was signed only by Attorney Sienkiewicz.  (*See id.*)  Attached to the Proposed Pretrial Order was a Certification certifying that a copy of the Proposed Pretrial Order was served on the Debtor on October 14, 2008 at the New York Address.  (*See id.*)  On November 5, 2008, the Second Amended Pretrial Order (A.P. Doc. I.D. No. 34, the "Pretrial Order") entered in substantially the same form as the Proposed Pretrial Order[10] which required (among other things) the Debtor to file an answer to the Amended Complaint on or before October 22, 2008 and scheduled trial on the Fourth Count for January 5, 2009.  The Pretrial Order was served on the Debtor's former counsel but was not served on the Debtor.  (*See* A.P. Doc. I.D. No. 35.)

Because the Debtor failed to file an answer to the Amended Complaint, on December 1, 2008, the Plaintiff filed a motion for entry of default.  (*See* A.P. Doc. I.D. No. 36.)  That motion was served upon the Debtor at the New York Address on December 1, 2008.  (*See id.*)  A Clerk's entry of default was entered on December 3, 2008.  (*See* A.P. Doc. I.D. No. 37.)  Notice of the same was served upon the Debtor at 57 Buckingham Road, New Milford, Connecticut, the address (the "Connecticut Address") of the Debtor upon the filing of his bankruptcy case and his only address of record.  (*See* A.P. Doc. I.D. No. 39.)

On December 4, 2008, the Plaintiff filed the Motion seeking a judgment of default on the Fourth Count.  The Plaintiff served a copy of the Motion upon the Debtor at the New York Address on December 4, 2008.  (*See* Motion.)  A hearing (the "Hearing") on the Motion was scheduled for December 31, 2008.  (*See* A.P. Doc. I.D. No. 40.)  The Plaintiff served a copy of the notice of the

---

[10] The Pretrial Order inserted a trial date, inserted the phrase "Second Amended" before Pretrial Order and struck paragraph 7 from the Proposed Pretrial Order.

Hearing on the Debtor at the New York Address on December 11, 2008.  (*See* A.P. Doc. I.D. No. 43.)

Counsel for the Plaintiff appeared at the Hearing.  The Debtor did not appear.  Because the court required the Plaintiff to establish a prima facie case with respect to the nondischargeability of the Debt pursuant to 11 U.S.C. § 523(a)(15), the Hearing was continued (the "Continued Hearing") to January 5, 2009 (the date scheduled for trial of the Fourth Count).  On January 1, 2009, the Plaintiff filed a Memorandum of Law (A.P. Doc. I.D. No. 44, the "Memorandum") in support of the Motion.  Counsel for the Plaintiff served a copy of the Memorandum on the Debtor at the New York Address.[11]

Counsel for the Plaintiff and the Plaintiff appeared at the Continued Hearing.  The Debtor did not appear.  The Plaintiff testified on her own behalf and introduced documentary evidence into the record.[12]  At the conclusion of the Continued Hearing, the court took the Motion under advisement.  The Motion now is ripe for decision.

## II.    ADEQUATE NOTICE

At that Continued Hearing, the court raised the issue of whether the Pretrial Order which (among other things) set the date for filing an answer to the Amended Complaint properly was served on the Debtor.[13]  Counsel for the Plaintiff, Jeffrey B. Sienkiewicz, Esq. represented that after Attorney Mannion withdrew from representing the Debtor, the Debtor served Attorney Sienkiewicz

---

[11]    Plaintiff also served the Memorandum on the Debtor at the Connecticut Address.

[12]    References to the Continued Hearing appear in the following form: "Oral Record at ___:___:___."  References to the exhibits appear in the following form: "Exh. ___."

[13]    The court became aware of this notice issue in the course of its preparation for the Continued Hearing and the trial.  As stated above, the Clerk's Office had served the Pretrial Order on the Debtor's former counsel, Attorney Mannion, but had not served it on the Debtor.

with the Notice of Appearance. (*See* Oral Record at 10:40:40 *et seq.*) Attorney Sienkiewicz further stated that all of his subsequent communications (both telephonic and written) with the Debtor had been at the New York Address. The court instructed that the Notice of Appearance be docketed on the record in addition to such notice having been entered into evidence as Exhibit C. It was docketed on January 5, 2009 as A.P. Doc. I.D. No. 45.[14]

Attorney Sienkiewicz also introduced the following documents (which were admitted as full exhibits) into evidence:

1. Exh. B: A reprinted copy of a letter dated December 11, 2008 and addressed to the Debtor from Attorney Sienkiewicz.[15] In that letter, counsel for the Plaintiff enclosed the Notice of Hearing which noticed the December 31, 2008 Hearing date, notified the Debtor that counsel would proceed on the Motion on the Hearing date and stated: "You may wish to consider filing your appearance with the necessary change of address and change in phone number." (Exh. B.)

2. Exh. D: A file copy of a letter dated December 12, 2008 to the Debtor enclosing a copy of the Pretrial Order and informing him of trial in the adversary proceeding on January 5, 2009.

---

[14] The court further noted that because the Notice of Appearance previously was not of record, the Clerk's Office continued to serve all court correspondence (including the order granting default and the notice of the Hearing on the Motion) to the Connecticut Address, the only address of record. (*See* Oral Record at 10:40:13 *et seq.*) On January 5, 2009, an order entered in the bankruptcy case directing additional service upon the Debtor at the New York Address (in addition to the address of record). (*See* Case Doc. I.D. No. 18.)

[15] Counsel stated that the letter was reprinted on January 1, 2009 from his computer as he was unable to locate a file copy of such letter.

With respect to the Pretrial Order, Attorney Sienkiewicz stated that the Debtor was aware of the dates in the Pretrial Order as Attorney Sienkiewicz had discussed them with the Debtor. (*See* Oral Record at 10:44:16 *et seq.*) In fact, Attorney Sienkiewicz continued, he sent an original copy of the Proposed Pretrial Order with the dates and his signature to the Debtor for the Debtor to sign prior to submission to the court for approval. (*See id.*) Further, Attorney Sienkiewicz sent another copy of the Proposed Pretrial Order to the Debtor when he submitted the Request for Entry of Order to the court. (*See* A.P. Doc. I.D. No. 33.) Attorney Sienkiewicz also stated that he sent a copy of the Pretrial Order to the Debtor on December 12, 2008. (*See* Exh. D.)

With respect to the notice of the Hearing, Continued Hearing and the trial date, Attorney Sienkiewicz stated that he served a copy of the notice of the Hearing on the Debtor on December 11, 2008. (*See* Exh. B; A.P. Doc. I.D. No. 43.)[16] Further, after the Hearing was continued to January 5, 2009, Attorney Sienkiewicz represented that he called the Debtor (at the phone number indicated in the Notice of Appearance) and left a message informing him that the Continued Hearing on the Motion and trial of the adversary proceeding would proceed on January 5, 2009. (*See* Oral Record at 10:45:11 *et seq.*) Attorney Sienkiewicz also noted that the Debtor would have been aware of the January 5 trial date because the Pretrial Order was mailed to him on December 12, 2008.[17] Finally, Attorney Sienkiewicz stated that the Debtor had not been in contact with him at all regarding any of his communications with the Debtor. (*See id.*)

---

[16] Therefore, the fact that the Clerk's Office sent the notice of the Hearing to the Connecticut Address did not deprive the Debtor of the requisite notice.

[17] In response to a query from the court, the Plaintiff stated that through a conversation that her oldest son had with his father, the Debtor was aware of the January 5 court date and in fact had expressed an intent to attend. (*See* Oral Record at 10:38:15 *et seq.*)

It is the Debtor's responsibility to ensure that his correct address is on the court records at all times. *See Katz v. Araujo (In re Araujo)*, 292 B.R. 19, 23 (Bankr. D. Conn. 2003). The Debtor failed to fulfill that obligation here and, consequently, continued to receive documents from the court at the only address of record, the Connecticut Address. Despite the lack of notice to the court of the New York Address and based on the docket, the Exhibits and the representations of Attorney Sienkiewicz, the court is satisfied that the Debtor received adequate notice and/or knew of the Hearing, the Continued Hearing and the trial date. Based on the foregoing, the court also is satisfied that the Debtor properly was served with the Amended Complaint, the Request for Entry of Order relating to the Pretrial Order, the motion for entry of default and the Motion.

The court also is satisfied that the Debtor received notice of the Pretrial Order. There is some support in the record that the Debtor had knowledge of the dates recited in the Pretrial Order as early as October, 2008. It is true that the Pretrial Order was not served on the Debtor until sometime after December 12, 2008, well after the date for filing a timely answer to the Amended Complaint. (*See* Exh. D.) However, the Pretrial Order was served well in advance of the Hearing date of December 31, 2008, notice of which was mailed to the Debtor, and in advance of the Continued Hearing date (and the date of trial of this adversary proceeding) of January 5, 2009. The Debtor opted not to appear at either of these hearings where he could have informed the court of any lack of notice of the Pretrial Order and where the court could have taken action accordingly. In any event, the court has determined that notice herein was proper. Accordingly, the court is satisfied that, based on all of the foregoing, the Debtor received adequate notice of the pleadings and hearings in this adversary proceeding.

**III.    FACTS**

The Plaintiff is the former spouse of the Debtor. On September 4, 1998, judgment (the "Judgment") entered in the Connecticut Superior Court dissolving the marriage of the parties. (*See* Exh. A.) A certain Separation Agreement (the "Separation Agreement"), dated September 4, 1998, was attached to and was ratified and incorporated into the Judgment. Section 8.5 ("Section 8.5") of the Separation Agreement provided:

> Pensions, Stocks, 401(k) Plans, Retirement Accounts, Etc
>
> One-half of the Husband's defined benefit retirement plan accrued to the date of dissolution of the marriage of the parties shall be transferred to the wife by way of a Qualified Domestic Relations Order (QDRO). The Superior Court shall retain jurisdiction over such QDRO.

(Separation Agreement at 16.)

At the time of the dissolution of the marriage, the Debtor was employed by the State of Indiana and was a member of the Indiana Public Employee's Retirement Fund. The Debtor's retirement benefit was comprised of (1) an annuity savings account and (2) a monthly pension paid for life. Under Indiana law, the Indiana Public Employee's Retirement Fund was not required to comply with QDROs. *See Everette v. Everette*, 841 N.E. 2d 210, 213-14 (Ind. Ct. App. 2006). Consequently, one-half of the Debtor's retirement benefit was never transferred to the Plaintiff pursuant to Section 8.5.

In light of Indiana law and pursuant to the Stay Order, the Plaintiff sought an alternative means of giving effect to the intention of the parties in accordance with Section 8.5 and sought to open and modify the Judgment for that purpose. Pursuant to a certain Memorandum of Decision (Exh. A, the "Memorandum of Decision") dated January 29, 2007, the Superior Court (Pickard, J.)

granted the motion to open and modify by substituting the following order (the "Modified Order") into the Separation Agreement in lieu of Section 8.5:

> Benefits to which the Husband, Brian T. Doughtery [sic], is entitled as a member of the Public Employees' Retirement Fund of the State of Indiana, consisting of an annuity savings account and a monthly pension, are hereby assigned and transferred pursuant to Section 46b-81 of the General Statutes, and are to be distributed to the Defendant, Denise A. Dougherty, as follows:
>
> A) Annuity Savings Account:
>
> 1) The Husband shall designate the Wife as the beneficiary of the Husband's State of Indiana Public Employees Retirement Fund annuity savings account, the "Fund", to the extent of $19,052.55, which amount represents one-half of the Husband's interest in the Fund annuity savings account as of September 30, 1998, plus interest on said amount at the interest rate paid by the Indiana Public Employment [sic] Retirement Fund for the "Guaranteed Fund" for the period from October 1, 1998 to the date of payment, compounded quarterly.
>
> To date, said interest rate is 8.25% per annum for calendar years 1998 through the first quarter of 2003, 7.75% for the last three quarters of 2003 and calendar year 2004, 6.25% for calendar year 2005 and 5.75% for calendar year 2006.
>
> Payment of said amount, together with accrued interest, shall be made to the Wife by the Fund in the event of the Husband's death prior to this [sic] retirement. Within thirty (30) days of the date of this order, the Husband shall provide the Wife with written documentation satisfactory to the Wife to demonstrate that he has so designated the Wife as beneficiary of such annuity savings account and that such designation is recognized as valid by said Fund.
>
> 2) The Husband shall pay to the Wife the sum of $19,052.25, which amount represents one-half of the Husband's interest in the Public Employees Retirement Fund annuity savings account as of September 30, 1998, plus interest on said amount at the interest rate paid by the Indiana Public Employment [sic] Retirement Fund for the "Guaranteed Fund" for the period from October 1, 1998 to the date of payment, compounded quarterly.

To date, said interest rate is 8.25% per annum for calendar years 1998 through the first quarter of 2003, 7.75% for the last three quarters of 2003 and calendar year 2004, 6.25% for calendar year 2005 and 5.75% for calendar year 2006.

The Husband shall make such payment ($19,052.55 plus accrued interest) to the Wife upon the earliest of the following dates: a) The date that Husband first withdraws, receives payment or elects any conversion or payment option with respect to the payment of any funds held in the Public Employees Retirement Fund annuity savings account; b) the date that the Husband is first eligible to receive payment from the Public Employees Retirement Fund annuity savings account without loss of pension benefits; or c) October 1, 2019, the first day of the month immediately after the date (September 8, 2019) that the Husband reaches 65 yeas [sic] of age.

B) Pension

1) The Husband shall pay to the Wife the sum of $407.00 per month commencing on the earliest of the following dates: a) the first month that the Husband is eligible to receive or receives monthly pension benefits from the State of Indiana Public Employees Retirement Fund; b) October 1, 2019, the first day of the month immediately after the date (September 8, 2019) that the Husband reaches 65 years of age. Said amount represents one-half of the estimated monthly pension benefit which the Husband is eligible to receive from the Fund calculated as of the date of dissolution, September 4, 1998. The Husband shall make such payment to the Wife so that it is received by the Wife not later than the fifteenth (15th) day of each month commencing with the first month that the Husband is obligated to make payments as described above.

C) Authorization for Disclosure of Information:

The Husband, Brian T. Dougherty, is hereby ordered to authorized and direct the Public Employees' Retirement Fund of the State of Indiana to disclose any and all information to the Wife, Denise A. Dougherty, or her agents or attorneys, concerning the Husband's interest in the Public Employees' Retirement [F]und of the State of Indiana, including but not limited to information concerning his eligibility to receive or his receipt of benefits, his employment, severance or retirement status, and any other information deemed necessary by the Wife to determine Husband's compliance with the provisions of this [Order] . . . of any Judgment affecting the distribution of Husband's benefits under the Public Employees'

>     Retirement Fund of the State of Indiana. The obligation imposed by
>     this order shall be a continuing obligation of the Husband.
>
>     D) Retention of Jurisdiction:
>
>     The Court shall retain jurisdiction over this matter to amend this
>     judgment or to enter such orders as are necessary to give effect to or
>     to enforce the obligations of the Husband as contemplated herein.

(Memorandum of Decision at 6-7.)

## IV.  LEGAL STANDARDS

Section 523(a)(15) provides in relevant part:

>     (a)    A discharge under section 727 . . . of this title does not discharge an
> individual debtor from any debt—
>                                     . . .
>     (15)   not of the kind described in paragraph (5) that is incurred by
>     the debtor in the course of a divorce . . . or in connection with a separation
>     agreement, divorce decree or other order of a court of record . . . *unless* –
>         (A) the debtor does not have the ability to pay such debt from
>         income or property of the debtor not reasonably necessary to be
>         expended for the maintenance or support of the debtor or a dependent
>         of the debtor . . . *or*
>         (B) discharging such debt would result in a benefit to the
>         debtor that outweighs the detrimental consequences to a . . . former
>         spouse . . . of the debtor . . . .

11 U.S.C.A. § 523(a)(15) (West 2004) (emphasis added).

The *standard* of proof under Section 523(a)(15), as with other Section 523(a) dischargeability exceptions, is a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. [279, 291 (1991)]. However, the *allocation* of the *burden* of proof under Section 523(a)(15) is somewhat unique. A plaintiff/former spouse bears the initial burden of demonstrating (i) that there is a "debt" owed to her; (ii) that such debt was "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement [or] divorce decree"; and (iii) that such obligation is "not of the kind described in . . . [Bankruptcy Code § 523(a)](5)." Upon a successful initial showing by the plaintiff, the burden then shifts to the debtor-defendant to prove either one of the dischargeability "safe harbors" provided by subparagraph (A) and (B) of Section 523(a)(15). *E.g., Matter of Crosswhite*, 148 F.3d 879 (7th Cir. 1998); *Simon v. Murrell (In re Murrell)*, 257 B.R. 386, 389 (Bankr. D. Conn. 2001). In this manner the ultimate burden of persuasion may lie with the debtor-defendant.

. . .

> "[A]bility to pay" under subsection (A) of Section 523(a)(15) is not a static concept, compelling its assessment at a fixed point in time such as the bankruptcy petition date, the time of the trial, etc. Rather, it is a fluid concept which permits the Court to consider a debtor's prior employment, future employment opportunities, health status, etc. to determine whether the future wealth and earning capacity of that debtor will be sufficient to allow for payment of the subject debt. *See, e.g., Hart v. Molino (In re Molino)*, 225 B.R. 904, 908 (6th Cir. BAP 1998). To borrow an analogy, unlike the "rear view mirror" analysis which may apply to contests under Section 523(a)(5), the Court is compelled by Section 523(a)(15) to look out all of the windows of its vehicle. *See In re Dressler*, 194 B.R. 290, 300 (Bankr. D.R.I. 1996).

. . .

> In essence, Section 523(a)(15)(B) embodies a form of "balancing test" in which a debtor must prove by a preponderance of the evidence that the benefit to him of a discharge of the subject debt outweighs the resulting detriment that will be suffered by the former spouse if the indebtedness is deemed dischargeable. This equitable balancing test must be applied on a case-by-case basis and involves an examination of the *totality of the circumstances* involved in each case. There is no fixed laundry list of factors to be considered, and no fixed weight to be accorded to particular facts. And as with Subsection (A), the balance must be assessed by the court with an eye out all "windows", *i.e.* with an awareness of the parties' past, present and future economic attributes and prospects.

*Gemza v. Rogan (In re Rogan)*, 283 B.R. 643, 647-49 (Bankr. D. Conn. 2002) (Dabrowski, J.) (emphasis in original; first alteration added).

## V. **THE FOURTH COUNT**

Pursuant to Bankruptcy Code § 523(a)(15), the Plaintiff bears the initial burden of proving: that (1) a debt is owed to her; (2) such debt was incurred in the course of a divorce or in connection with a separation agreement or divorce decree; and (3) such debt is not in the nature of a Bankruptcy Code § 523(a)(5) debt. *See Rogan, supra*.

Here, the evidence before the court supports the conclusion that the Plaintiff made a prima facie showing and has sustained her initial burden under Bankruptcy Code § 523(a)(15). The Judgment, as amended by the Modified Order, awarded the Debt to the Plaintiff. Further, the Debtor

took the position in the Connecticut Appellate Court that the Debt in respect of the Fourth Count was in the nature of a "property settlement" (i.e., not a Section 523(a)(5) debt) and would not be heard to change his position now. *See Dougherty v. Dougherty*, 109 Conn. App. 33, 34 (2008) ("On appeal, the [Debtor] . . . argues that the [trial] court improperly . . . granted the motion to open and to modify a property settlement . . . ."). *See also Schwaiger v. Schwaiger (In re Schwaiger)*, 361 B.R. 181, 187 (Bankr. D. Kan. 2007) (finding that obligation of husband to pay former wife monthly portions from his military pension "was in the form of a property equalization payment and therefore subject to discharge under § 523(a)(15).")[18] Accordingly, the Plaintiff has carried her burden.

Under *Rogan*, the burden now would switch to the Debtor to "prove, either one of the dischargeability 'safe harbors' provided by subparagraph (A) and (B) of Section 523(a)(15)." *Rogan*, 283 B.R. at 647. Under both of the "safe harbor provisions," the court is required to assess the "totality of the circumstances" including past, present and future information relating to employment, health issues and other circumstances of the Plaintiff and the Debtor. However, because the Debtor failed to appear at either the Hearing or the Continued Hearing (despite adequate notice), the Debtor has failed to meet his burden of proof. Consequently, the court finds and/or concludes that the Plaintiff has sustained her burden by a preponderance of the evidence which the

---

[18] The court notes that in resolving this issue several courts examine the issue of whether an award to a former spouse of a portion of a debtor's pension constitutes a "debt" that would be subject to discharge. *See, e.g., Bush v. Taylor*, 912 F.2d 989, 993 (8th Cir. 1990); *In re Gomez*, 206 B.R. 663 (Bankr. E.D.N.Y. 1997). Those courts reason that because no obligation to pay a former spouse arises until the Debtor is paid from his pension, no debt arises until payment is due. Here, the court does not need to get to that issue. That is because if the "debt" is a postpetition debt because it has not yet matured, then that "debt" is not subject to the discharge and would be deemed nondischargeable. If the "debt" is a prepetition debt, then the "debt" is subject to the foregoing discussion and is deemed nondischargeable.

Debtor failed to rebut by establishing one of the safe harbors. Consequently, the Debt is deemed nondischargeable pursuant to Section 523(a)(15).

**VI.** <u>**CONCLUSION**</u>

For the reasons set forth above, the court concludes that the Debt was not discharged in this chapter 7 case pursuant to Bankruptcy Code § 523(a)(15). Judgment shall enter accordingly.

Dated: August 5, 2009                          BY THE COURT

                                                                        Lorraine Murphy Weil
                                                                       United States Bankruptcy Judge